UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA            CRIMINAL ACTION

VERSUS

ERIC WAYNE HAWKINS            NO. 03-00194-BAJ-EWD

RULING AND ORDER

Before the Court is Defendant's *pro se* **Motion for Reconsideration (Doc. 165, the "Motion").** The Motion is unopposed. The Court referred the matter to the Office of the Federal Public Defender for the limited purpose of representing Defendant regarding Defendant's Motion. (Doc. 173). The Court provided a briefing schedule. (*Id.*). Thereafter, the Assistant Federal Public Defender filed a Memorandum in Support of Defendant's Motion. (Doc. 174). The United States did not file an opposition. For the reasons stated herein, Defendant's Motion is **GRANTED.**

I.     BACKGROUND

On November 12, 2003, the Grand Jury returned a three-count Indictment charging Defendant with the following: (1) Count One, distribution of five grams or more of a substance containing a detectable amount of cocaine base ("crack" cocaine); (2) Count Two, distribution of fifty grams or more of a substance containing a detectable amount of cocaine base and a substance containing a detectable amount of cocaine; and (3) Count Three, distribution of fifty grams or more of a substance containing a detectable amount of cocaine base. (Doc. 1).

1

Following a jury trial, Defendant was found guilty on Counts Two and Three of the Indictment. (Doc. 67; Doc. 81). The Court dismissed Count One of the Indictment on the Government's Motion. (Doc. 81). The Court sentenced Defendant to a term of imprisonment of "life without release" on Count Two and 360 months on Count Three, to be served concurrently. (*Id.* at p. 3). The Court imposed a term of supervised release of eight years upon Defendant's release from imprisonment. (*Id.* at p. 4).

The Government filed notice pursuant to 21 U.S.C. § 851 that Defendant had two prior felony drug convictions. (*See* Doc. 122). Accordingly, Defendant was sentenced to the statutorily mandated sentence of life without release. (*Id.*).

Defendant appealed his conviction and sentence. (Doc. 79). The United States Court of Appeals for the Fifth Circuit affirmed the judgment of the Court, noting that Defendant had been sentenced pursuant to the statutory mandate of 21 U.S.C. § 841(b)(1)(a). (Doc. 95, p. 4; *see also* Doc. 122).

Defendant then filed a Motion to Vacate Under 28 U.S.C. § 2255, asserting that he received insufficient notice of the Government's intent to rely on prior state convictions to enhance his sentence. (Doc. 97). The Court dismissed Petitioner's Motion to Vacate, Set Aside, or Correct Sentence with prejudice as untimely pursuant to 28 U.S.C. § 2255(1). (Doc. 115).

Petitioner then filed a "Motion Requesting Modification of Sentence of Imprisonment[] and[] Judicial Notice of Law in Accordance with 18 U.S.C. § 3582(c)(2) Motion [and] Federal Rule[] of Evidence 201." (Doc. 119).

2

Therein, Defendant alleged that in imposing the sentence, the Court erroneously relied on a prior state conviction despite the Government's failure to provide timely notice of its intent to introduce the conviction to enhance his sentence. (*Id.*; *see also* Doc. 122).

The Court denied Defendant's Motion for a modification of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B)(2) and 28 U.S.C. § 2250. (Doc. 122). The Court found that the plain language of Section 3582 applied only to sentences that are "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." (*Id.* at p. 3). In denying Defendant's Motion, the Court reasoned that "because [D]efendant was sentenced pursuant to the statutory mandate of 21 U.S.C. § 841(b)(1)(a) rather than the federal sentencing guidelines, a reduction in his term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2)." (*Id.* at p. 4).

Defendant appealed the Court's Ruling. (Doc. 125; Doc. 127). The Fifth Circuit remanded the matter to the Court to determine whether Defendant's notice of appeal was filed timely, and if not, whether Defendant's late filing was due to excusable neglect or good cause. (Doc. 131; *see also* Doc. 133). The Court concluded that Defendant failed to deliver his notice of appeal to prison officials timely but found good cause for the Defendant's delay in filing the notice of appeal. (Doc. 133, p. 1). Upon return to the Fifth Circuit, that court then dismissed the appeal for want of prosecution as Defendant failed to timely file a brief. (Doc. 141, p. 2). Thereafter, the Fifth Circuit granted Defendant's motion to reinstate the appeal. (Doc. 142). Finally,

on October 6, 2009, the Fifth Circuit dismissed the appeal as frivolous. (Doc. 143, p. 2).

On May 6, 2016, the Court entered an Administrative Order regarding "request for relief in light of *Johnson v. United States*, [576 U.S. 591 (2015)] which was made retroactive by the United States Supreme Court in *Welch v. United States*, [578 U.S. 120 (2016)]." (Doc. 148). Therein, the Court appointed the Office of the Federal Public Defender to represent any defendant who was previously determined to have been entitled to appointment of counsel or who is now indigent and who has been identified as possibly qualifying for federal habeas relief under either 28 U.S.C. § 2255 or 28 U.S.C. § 2241, in light of *Johnson* and *Welch*. (*Id.* at p. 1). The Court formed a *Johnson* Review Committee, consisting of representatives of the Federal Public Defender, the U.S. Attorney's Office, and the U.S. Probation Office to continue the process of identifying and reviewing all criminal cases with filings in the Court requesting relief under *Johnson*, and to make recommendations to the Court regarding the proper resolution of the filings. (Doc. 149, p. 2). Following this process, the Government filed a Notice to the Court, representing that no *Johnson* motions were filed in this matter and that the Court's Administrative Orders were rendered moot. (Doc. 154, p. 2).

Defendant then filed a Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act of 2018. (Doc. 159). The Court granted Defendant's Motion and reduced Defendant's term of imprisonment from a life sentence to 360 months. (Doc. 163).

4

Defendant now moves for reconsideration of the Court's Ruling. (Doc. 165). Defendant simultaneously filed a Notice of Appeal, appealing the Court's Order reducing his sentence. (Doc. 166). The Fifth Circuit remanded the matter to the Court for the limited purpose of ruling on Defendant's Motion for Reconsideration. (Doc. 171).

## II.   LEGAL STANDARD

Although motions for reconsideration "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device." *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (*citing United States v. Cook*, 670 F.2d 46, 48 (5th Cir.), *cert. denied*, 456 U.S. 982 (1982)); *see also United States v. Brewer*, 60 F. 3d 1142, 1143 (5th Cir. 1995) ("a motion for reconsideration . . . is a judicial creation not derived from statutes or rules"). Courts have "continuing jurisdiction over criminal cases and are free to reconsider [their] earlier decisions." *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975). In the context of criminal proceedings, courts have applied the same legal standards as for motions for reconsideration in civil cases. *United States v. Evans*, No. 15-61, 2018 WL 6427854, at *2 (E.D. La. Dec. 7, 2018); *United States v. Cramer*, No. 1:16-CR-26, 2018 WL 7821079, at *2 (E.D. Tex. Mar. 8, 2018); *United States v. Fisch*, No. H-11-722, 2014 WL 309068, at *1 (S.D. Tex. Jan. 28, 2014); *see also United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982); *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012); *United States v. Garay*, No. 3:19-CR-122-S, 2021 WL 807254, at *2 (N.D. Tex. Mar. 3, 2021).

5

In the civil context, a motion for reconsideration that challenges a final civil judgment is treated either as a motion to alter or amend the judgment under Federal Rules of Civil Procedure 59(e), or as a motion seeking relief from judgment under Rule 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 14 (5th Cir. 1994). Here, the Court construes Defendant's Motion as a Rule 59(e) motion to alter or amend the judgment. "Rule 59(e) offers a narrow, 28-day window to ask for relief; limits requests for reconsideration to matters properly raised in the challenged judgment; and consolidates proceedings by producing a single final judgment for appeal." *Banister v. Davis*, 140 S. Ct. 1698, 1700 (2020). Defendant's motion was timely filed within the limits imposed by Rule 59(e).

## III. DISCUSSION

### A. Court's Authority to Provide Relief Under First Step Act

Before considering whether to reduce Defendant's sentence in response to Defendant's Motion to Reconsider the Court's Order granting a Sentence Reduction Pursuant to the First Step Act of 2018, the Court must determine whether it has the authority to do so.

The Fair Sentencing Act modified the statutory penalties for certain crack-cocaine offenses. *United States v. Winters*, 986 F.3d 942, 945 (5th Cir. 2021) (citing Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (2010)). Among other changes, that enactment "increased the drug amounts triggering mandatory minimums for crack trafficking offenses." *Winters*,

6

986 F.3d at 945 (citing *Dorsey v. United States*, 567 U.S. 260, 269 (2012)). The Fair Sentencing Act drastically reduced disparities in punishments between crack-cocaine and powder-cocaine offenses. *Winters*, 986 F.3d at 945 (citing *Dorsey*, 567 U.S. at 269).

In 2018, Congress enacted the First Step Act. *Winters*, 986 F.3d at 945. Among other effects, it made the Fair Sentencing Act's modifications of the statutory penalties for crack-cocaine offenses apply retroactively. *Id.* (citing First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018)). In summary, the First Step Act provides that if the motion for a sentence reduction identifies a "covered offense" under Section 404(a), the district court has authority under Section 404(b) to impose a reduced sentence "as if" the penalties as amended by Sections 2 and 3 of the Fair Sentencing Act were in effect. *Winters*, 986 F.3d at 945. A district court, though, may not grant a First Step Act motion if either of Section 404(c)'s limitations apply. *Id.*

> The specific language of the First Step Act provides:
>
> (a) Definition of Covered Offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

7

> (c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Winters*, 986 F.3d at 946 (citing First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018)).

"It is clear that the First Step Act grants a district judge limited authority to consider reducing a sentence previously imposed." *Winters*, 986 F.3d at 950 (citing *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 285, 205 L. Ed. 2d 195 (2019)). If a movant presents a "covered offense," then Section 404(b) permits the Court to "plac[e] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act." *Winters*, 986 F.3d at 950–51 (citing *Hegwood*, 934 F.3d at 418).

The Fifth Circuit has provided the following guidance regarding "[t]he mechanics of First Step Act sentencing":

> The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act. The district court's action is better understood as imposing, not modifying, a sentence, because the sentencing is being conducted as if all the conditions for the original sentencing were again in place with the one exception. The new sentence conceptually substitutes for the original sentence, as opposed to modifying that sentence.

*Hegwood*, 934 F.3d 418–19.

8

A resentencing court has broad discretion because the First Step Act does not require a sentence reduction even if the defendant is eligible for one. *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019), *cert. denied*, ––– U.S. –––, 140 S. Ct. 2699 (2020)). However, "[a] court abuses its discretion when the court makes an error of law or bases its decision on a clearly erroneous assessment of the evidence." *United States v. Larry*, 632 F.3d 933, 936 (5th Cir. 2011) (internal quotation marks and citation omitted)). Additionally, a district court lacks authority to reduce a sentence that is already at the statutory minimum penalty under the Fair Sentencing Act. *Winters*, 986 F.3d at 951.

Applying the legal principles set forth, the Court finds that it has the authority to reconsider the reduction previously granted under the First Step Act.

First, it is undisputed that Defendant committed a "covered offense" within the meaning of Section 404(a). Accordingly, Section 404(b) provides the Court the authority to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Winters*, 986 F.3d at 950 (citing First Step Act § 404(b)). Indeed, the Court has already reduced Defendant's sentence pursuant to the First Step Act. (*See* Doc. 164).

Second, the Court may still reduce Defendant's sentence without dropping below the statutory "floor" for his offense. *Winters*, 986 F.3d at 951. Here, the U.S. Probation Office filed a "Retroactive Application of the Fair Sentencing Act of 2010 Pursuant to the First Step Act," comparing the original statutory and guidelines provisions applicable to Defendant to the new provisions applicable to

9

Defendant retroactively under the First Step Act. (Doc. 160). Notably, at the time of Defendant's original sentencing, he was subject to a statutory prison range of life imprisonment on Count Two. (Doc. 160, p. 2). Now, Defendant's statutory prison range on Count Two has been reduced to ten years to life imprisonment. (*Id.*). At the time of Defendant's original sentencing, he was subject to a statutory prison range of ten years to life imprisonment on Count Three. (*Id.*). Now, Defendant's statutory prison range on Count Three has been reduced to zero to thirty years. (*Id.*).

The "statutory floor" in this case is ten years. (*See id.*). The Court previously reduced Defendant's sentence from life imprisonment to three hundred and sixty months or thirty years, three times the applicable "statutory floor." (Doc. 164). Accordingly, the applicable statutory minimums do not strip the Court of authority to reduce Defendant's sentence further. *See Winters*, 986 F.3d at 951. Indeed, Defendant has already served twenty years, twice the statutory minimum applicable.

Third, the Court must determine whether either of the limitations contained in Section 404(c) apply. If the limitations of Section 404(c) apply, the Court does not have authority to grant a First Step Act motion. Section 404(c) provides that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . ." Thus, the question becomes whether Section 404(c) precludes the Court from "entertain[ing]" Defendant's Motion for Reconsideration because the Court previously reduced Defendant's sentence.

10

The United States Court of Appeals for the Seventh Circuit addressed this issue in *United States v. Hible,* noting that it had "not found any precedential appellate opinion addressing the effect of motions to reconsider decisions under the First Step Act." 13 F.4th 647, 650 (7th Cir. 2021). The Seventh Circuit held that while Section 404(c) "says that the prisoner must be satisfied with one 'complete review of the motion on the merits,'" "a motion for reconsideration is *part* of that 'complete review . . . on the merits' rather than a second or successive motion." *Id.* at 651. The court emphasized that the ban on successive motions under the First Step Act is parallel to the limit on successive motions for collateral review under 28 U.S.C. § 2255. *Id.*

The Seventh Circuit relied on the Supreme Court's holding in *Banister v. Davis,* —— U.S. ——, 140 S. Ct. 1698, 207 L. Ed. 2d 58 (2020), wherein the Court held that "a motion for reconsideration is just an ordinary filing designed to lead to the proper outcome in the original collateral proceeding." *Hible,* 13 F.4th at 651. The Seventh Circuit found that the Supreme Court's "rationale for rejecting the second-or-successive characterization of a motion to reconsider in *Banister* means that [the Seventh Circuit] should reject the second-or-successive characterization of a motion under a retroactive statute." *Id.*

The Court agrees with the Seventh Circuit's characterization of a motion to reconsider a reduction of sentence under the First Step Act. Accordingly, the Court finds that the first of Section 404(c)'s limitations does not prevent the Court from considering the merits of Defendant's Motion to Reconsider.

11

The second limitation contained in Section 404(c) provides that the Court shall not entertain a motion "if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." The Court has not denied a previous motion to reduce Defendant's sentence. Therefore, the second limitation contained in Section 404(c) does not limit the Court's authority to reconsider Defendant's sentence.

Finding that the Court has authority to consider Defendant's Motion to Reconsider, the Court now turns to the merits of the Motion.

### B. Merits of Defendant's Motion for Reconsideration

Turning to the merits of Defendant's Motion, the Court finds, in its discretion, that a further reduction of Defendant's sentence is appropriate.

In his *pro se* Motion, Defendant asserts that under the current sentence, he would serve another eleven years before his earliest release date, meaning he would be seventy years old at the time of release.[1] (Doc. 165, p. 1). Defendant asserts that this is essentially a life sentence. (*Id.*). Defendant asks the Court to consider his age, the amount of time already served, and the possibility that 30 years is the "high end of the sentence." (*Id.* at p. 2).

Recognizing that reconsideration of a judgment after its entry is an "extraordinary remedy that should be used sparingly," the Court finds that this standard is met here. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79

---

[1] The Bureau of Prisons' website indicates that Defendant's release date, as of the date of the issuance of this Ruling and Order, is December 25, 2029. *See* https://www.bop.gov/inmateloc/ (last visited Dec. 2, 2021). This release date seemingly accounts for "good time" credit. Defendant will be approximately sixty-eight years old in 2029.

12

(5th Cir. 2004). Rule 59(e) gives the Court a chance "to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (internal citations omitted). Defendant did not benefit from the assistance of counsel at the time of filing his initial Motion. (*See* Doc. 165). After reviewing Defense Counsel's Memorandum in Support, which points out numerous equities in Defendant's favor, the Court finds that its initial analysis was too constrained and has determined that reconsideration is appropriate here. (*See* Doc. 174).

Defense Counsel filed a Memorandum in Support on behalf of Defendant, arguing that the Court should reduce Defendant's sentence to "time served." (Doc. 174, p. 3). Counsel presents the following equities in Defendant's favor: (1) Defendant never used violence as part of his drug enterprise or in the instant offense; (2) Defendant did not possess weapons; (3) Defendant is sixty years old and has been in custody since he was forty years old; (4) between his years in prison and his years of drug use, Defendant is old beyond his years and has likely already entered the twilight of his life; (5) Defendant's advanced age makes recidivism unlikely; (6) Defendant has accepted responsibility for his actions; (7) Defendant has participated in educational, lifestyle, and vocational training courses while in prison in an effort to rehabilitate himself and become a more productive citizen; and (8) the two decades Defendant has spent in custody are more than sufficient to promote respect for the law and to reflect the severity of the offense. (*Id.* at p. 3–5). Defendant asserts that he is the type of nonviolent drug offender Congress had in mind when

13

passing the First Step Act. (*Id.* at p. 3). Importantly, the Government failed to oppose Defendant's Motion despite being given the opportunity to do so. (*See* Doc. 173).

In its initial Order reducing Defendant's sentence, the Court found the following:

> Pursuant to Section 404 of the First Step Act, the defendant's statutory and guideline provisions are reduced. Since the original sentencing court was required to impose a life sentence, it is impossible to determine the court's intent had it had the option of imposing a non-life sentence of imprisonment. As such, the court looks to the factors enumerated under 18 U.S.C. § 3553(a), particularly the history and characteristics of the defendant and the need for the sentence imposed to provide just punishment for the offense. Hawkins has numerous criminal convictions that amounted to a total of 30 criminal history points. However, 23 of these points were for drug-related offenses. That being said, the defendant also has a history of violence, including a conviction for simple battery and arrests for second degree battery and attempted second degree murder. The defendant has been incarcerated since 2001 (including for state drug charges) and is 58 years old. While incarcerated in the Bureau of Prisons, he has completed several educational courses, but has also been sanctioned seven times, losing 127 days of good time credit in the process. Considering all of this information, it is ordered that the defendant's sentence be reduced to 360 months imprisonment. Additionally, it is ordered that a term of eight years supervised release be imposed.

(Doc. 164).

Recognizing Defendant's negative characteristics previously acknowledged by the Court, the Court finds that the sentence imposed overstates the instant offenses. As Defense Counsel points out, Defendant is sixty years old and has been in custody for twenty years, since he was forty years old. The U.S. Sentencing Commission found in a 2017 study that older offenders are substantially less likely than younger offenders to recidivate following release. *See The Effects of Aging on Recidivism Among Federal Offenders*, U.S. Sentencing Comm'n (Dec. 2017),

14

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited Nov. 22, 2021). The Commission found:

> Over an eight-year follow-up period, 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release. The pattern was consistent across age groupings, and recidivism measured by rearrest, reconviction, and reincarceration declined as age increased.

*Id.* at p. 3. The Commission also found:

> For federal offenders under age 30 at the time of release, over one-fourth (26.6%) who recidivated had assault as their most common new charge. By comparison, for offenders 60 years old or older at the time of release, almost one quarter (23.7%) who recidivated had a public order offense as their most serious new charge.

*Id.* For offenders in Criminal History Category VI, like Defendant, the rearrest rate ranged from 89.7 percent for offenders younger than age 30 at the time of release to 37.7 percent for offenders age 60 or older. *Id.*

Age exerted a strong influence on recidivism across all sentence length categories. *Id.* Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed. *Id.*

Related to Defendant's drug-trafficking offenses, the Commission found:

> For certain major offense types, the type of federal offense that offenders had committed also had an effect on recidivism across age groups. For example, firearms offenders had a substantially higher rearrest rate across all age categories than drug trafficking offenders, who in turn had a higher rearrest rate across all age categories than fraud offenders. For example, for offenders under age 30 at the time of release, the rearrest rates were 79.3 percent (firearms), 62.5 percent (drug trafficking), and 53.6 percent (fraud). Similarly, for offenders age 60 and older at the time

15

of release, the rearrest rates were 30.2 percent (firearms), 17.5 percent (drug trafficking), and 12.5 percent (fraud).

*Id.* Finally, federal prisoners, like Defendant, had a substantially lower recidivism rate than state prisoners. *Id.*

Defendant's age of sixty years old classifies him as an older offender, indicating that he is less likely to recidivate. Defendant has served twenty years in prison, which reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence to future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). Additionally, the record reflects that Defendant has completed several educational courses on topics such as anger management, parenting, addiction, and other psychological courses, as contemplated by Section 3553(a)(2)(D). (Doc. 160; Doc. 164).

The Court recognizes, however, Defendant's high Criminal History Category, including past convictions for simple battery and arrests for second degree battery and attempted second degree murder. (Doc. 164). According to Bureau of Prison records, Defendant has been sanctioned seven times since 2009, but was most recently sanctioned over five years ago in May 2016. (Doc. 160, p. 2–3). While these factors are troubling, the Court finds that after twenty years in prison, at age sixty, eight additional years in prison resulting in Defendant's eventual release at age sixty-eight is unlikely to serve a meaningful purpose. Defendant has served his time.

Finally, the disparities in sentencing regarding crack cocaine offenses have been well documented. Reforms to address this issue appear to be underway in Congress. *See* Sarah N. Lynch, *U.S. House Passes Bill to End Disparities in Crack*

16

*Cocaine Sentences*, REUTERS (Sept. 28, 2021), https://www.reuters.com/world/us/us-house-passes-bill-end-disparities-crack-cocaine-sentences-2021-09-28/ (last visited Nov. 22, 2021). Noting that the result may have been different had the Government presented compelling reasons in opposition to the instant Motion, the Court finds it appropriate to reduce Defendant's sentence to a term of "time served." The Court finds this sentence sufficient, but not greater than necessary, to further the goals of sentencing.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion for Reconsideration (Doc. 165)** is **GRANTED.** Defendant's sentence shall be reduced to a term of time served, followed by a term of 8 years of supervised release.

**IT IS FURTHER ORDERED** that Defendant's **Motions for Extension of Time (Doc. 170; Doc. 172)** are **DENIED AS MOOT**. In his Motion for Extension, Defendant requests a delay of sixty days to provide time for private counsel to enroll on his behalf. (Doc. 172). Sixty days have passed since the filing of Defendant's Motion and no such counsel has enrolled. Additionally, the Court appointed Counsel to represent Defendant regarding his Motion for Reconsideration. Indeed, since the filing of Defendant's Motion for Extension of Time (*see id.*), the Assistant Federal Public Defender filed a Brief in support of the Defendant's Motion for Reconsideration. (Doc. 174).

Baton Rouge, Louisiana, this 9th day of December, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**